Parker, C. J.
(Dissenting) :
* * * The Legislature, which is vested with the power to direct the conduct of the business operations of the state, by this statute has not only declared it to be the policy of the state as a proprietor to pay the prevailing rate of wages, but has enjoined upon its several agents and agencies the-duty of executing this policy. * * *
No one has presumed to challenge the right of an individual! either to pay the prevailing rate of wages in his locality, or,, if he concludes to have his work done by contract, to refuse-to award it to a contractor who will not agree to pay the-, going wages to all employes that may be engaged upon» the-work. But the state seems to be regarded in some quarters-as having less power as a proprietor than an individual, so* that what an individual may contract to do in the performance-of his own work, the state itself may not' do» when it assumes the role of proprietor and attempts the eonstructiom of important public work. * * *
So, if authority be needed, we have the authority of this-court that the legislature has the power to provide that thepolicv of the State shall- be to pay the going rate of wages-in the locality in which a public work is to be done and to* command its agents to obey its directions in that regard.
* * Of course, a contractor would not be obliged to accept a-contract under such terms; but certainly would' do- so- if he-wished the work, for the state as proprietor would have the-right to impose any terms it might choose as a condition of awarding the contract, just as an individual might do. Terms» might thus be imposed which would be wise or very foolish for both the' state and the contractor, in the estimation of the latter; * * *
The authority of the state, however, is supreme in every part of it, and in all of the public undertakings the state is» the proprietor. For convenience of local administration the state has been divided into municipalities, in each of which *155 There may be found local officers exercising a certain measure ■of authority, but in that they are but the agents of the : state, without power to do a single act beyond the boundary :set by the state acting through its legislature. Charters .are given to cities by means of which are created what are .known as municipal corporations; but the creation is solely .for the purpose of doing the work of the state in the particular locality affected, and in the creation of these agencies •..the legislature designates the number of officers, determines what they shall be called,, prescribes what particular portion ■ of the municipal work each shall do, fixes their compensation .and provides a method by which shall be chosen a proper .amount of assistance, clerical and otherwise, to perform the' work, and from time to time enlarges or restricts the fields •■of labor of the several officers; it also from time to time by .special enactment authorizes undertakings of large public importance, not contemplated perhaps at the time of the granting of the charter or at the time of a general revision of it. If the legislature becomes dissatisfied with the general working of a charter it may change it or create a new one, for it is possessed of supreme authority to provide how the municipal .■affairs shall be conducted and to determine what great public works, if any, shall be undertaken. * * *
Similar instances almost without number might be multiplied, all of which would serve as illustrations merely that the state acting through its legislature has absolute power .-and control over all the public works within the state, undertaken and carried on with public funds, whether the work be paid for by a municipality or by the state at large, and that those who let the contracts, superintend the construction, audit the bills and pay them, are in such work but the agents of the state, whether the agency be created by the provisions of a ■charter or by special enactment. If authority be needed ■in support of this proposition, it may be found in Williams v. Eggleston (170 U. S., 304). At page 310 the court ■say: “A municipal corporation is, so far as its purely municipal relations are concerned, simply an agency of the .state for conducting the affairs of government, and as such -it- is subject to the control of the legislature.” Mayor v. Tenth National Bank, (111 N. Y., 446.)
*156 Other authorities m which the propositoin is in effect, either decided or asserted that a municipal corporation is-simply an agency of the state for the conduct of the affairs-of government, and, therefore, subject to the control of the. legislature in all respects except as expressly limited by the constitution, are: In Re Protestant Episcopal School 46 N. Y., 178; Terrett v. Taylor, 9 Cranch, 43; Payne v. Treadwell, 16 Cal., 221 ;Jones v. Lake View, 151 Ill., 663; Frederick City v. Groshon, 30 Md., 463; Groff v. Frederick City, 44 Md., 67 ;State Bank v. Madison 3 Ind., 43; Patterson v. Society for E. M. U., 24 N. J. L., 385; State ex rel., Cleveland v. Board of Finance, 38 N. L. J., 259; In Re Dalton, 59 Pac., Rep., 336.
In the latter case the petitioner was arrested for violating the provisions of Chap., 114, of the Laws of 1891 of the state-of Kansas, which provided that eight hours should constitute a da>’s work for laborers, workmen, mechanics and other-persons employed by or on behalf of the state of Kansas, or by or on behalf of any county, city, township or other municipality in the state. He sought to be relieved from trial-through habeas corpus proceedings, claiming that the act was unconstitutional, and in the course of the opinion the court said:
“Whatever orders the state may give directly to its own agents it may require of its political sub-divisions, instrumenvalities of said government, such as counties, cities, townships. These sub-divisions are merely involuntary political or civil divisions of the 'state, created by statute to aid in the ádministration of government. * * * ”
If the views so far expressed be sound, it would seem to follow that the position taken by the state in enacting) this statute is precisely like that of an individual who for any reason determines that if it be a little more than honest as that term is usually employed, it is not more than just to pay for a thing what it is fairly worth, and that the principle should be applied as well to the compensation of lábor as-to. the payment for material, and hence decides that in construction work he will pay the market price. The state having determined upon such a course of action by this statute,. *157 directs its agents and agencies, wherever throughout the state-they may be situated, that in the doing of a public work they shall pay the going wages whenever the work is to be done-by day’s work; and whenever it is to be done by contract,, then the agent, wherever situated, shall put into the contract that it executes, by authority of the state, a provision that thedontractor shall pay such rate.
There are no authorities in this state that militate against the-position that I have taken. On the contrary, such as there-are support it. In People v. Warren (17 Hun., 120) the-defendant had been charged before a police magistrate with av. violation of Section 504, Chapter 105, of the Laws of 1891, entitled, “Act to revise the charter of the city of Buffalo.”' That charter provided, among other things, that “in contracting for any work required to be done by the city, a clause shall' be inserted that the contractor submitting proposals shall bind himself, in the performance of such work, not to discriminate, either as to the workmen or wages, against members of labor organizations, or accept any more than eight hours as a day’s work, to be performed within nine consecutive-hours. * * *”
The city said to the- defendant and to all' other contractors', when it invited the bids for the performance of the work, the-statute is one of the conditions which must be assumed by the contracting party. The defendant was not obliged to bid. The-conditions imposed applied equally to all who should bid. The act of bidding was with full knowledge and voluntary.. Ünder these conditions defendant made its bid, and when-awarded the contract voluntarily executed the same and assumed the obligations imposed upon the city by the statute.. How can it be said that he was an independent contractor, freed of obligation ? He was an independent contractor, but he is not independent of the obligations imposed by the contract.” People ex rel. Warren v. Beck, 10 Misc. Rep. 77).
It should also be said, before passing, to the consideration of -the contract, that the judge before whom this matter' came at Special Term, was of the opinion that the act is constitutional, and while there was a difference of view in the Appellate-Division as to certain questions, not one of the judges of that; *158 -court expressed an opinion that the state, in so far as it directed its agents to insert a provision in the contract that the prevailing rate of wages should be paid, acted beyond its power. Indeed, in the prevailing opinion, it is said: ‘T am . satisfied that the legislature has power to prescribe the form of contracts which shall be made by municipal corporations with those entering into contracts with it. No one is bound to enter into such a contract or to do work for a municipal • corporation, but when he does he must accept the terms of the ■■contract as prescribed by law, and if he voluntarily makes a contract by which he is to receive pay only upon condition of his performing certain obligations or doing work that he agree* • to do in a certain way, the contractor certainly cannot complain if the city refuses to pay except upon his compliance with the terms of the engagement.”
Since the argument there has been evolved the notion that • the- few constitutional limitations upon the power of the state to control at will, through legislative action, all the affairs of municipalities, in some way helps out the contention of the • majority that the state is not the proprietor in the grading and consmtction of the streets in question. It seems to me that -.the effect of these exceptions is to prove the rule, if proof be •needed, that the state can do what it chooses in respect to public improvements anywhere within its borders, whether ■ the territory affected be within city limits or in the rural sec- ■ tions of the state, provided only that it does not transcend the limitations that the people have seen fit to place upon that ■power by means of the constitution. That instrument will be searched in vain for any restrictions upon the power of the leg- • islature to grade or improve highways. * * * Butj however the moneys necessary to pay the expenses of such an im■provement may be raised, it is the state,that authorizes the improvement, selects the agency by which it is conducted and i alone determines the source from which the money needed fo pay the expense shall come, and its power in that respect has •no limitations whatever.
The prevailing opinions discuss a question which is not -the power to provide that the municipal authorities shall pay to í their employees going- wages. As the discussion which that *159 question has received is, in my opinion, obiter, I shall not refer to it further than to say that I dissent from the views expressed in relation thereto on the ground that the statute offends no provision of the constitution when it undertakes to provide that the. city shall pay the prevailing rate of wages to those who work for it. Who denies the power of the legislature to fix .the rate of compensation for the mayor, the comptroller, the police commissioner, the clerk, the attendant, and the messenger? If anyone does, I have not heard him. Why may it not then fix the rate of compensation for the engineer in charge of its heating and ventilating apparatus, its skilled mechanics or its street sweepers? Where in the constitution is to be found the provision that so discriminates between the classes into which the public service is divided .as to allow .the legislature to provide certainty and stability ■of compensation to the one and.denies a similar power as to the other? My attention has not been called to such a provision, nor have I been able to find it after diligent search. * * *
* ' * * In the contract between the city and this relator it is agreed in terms that “the wages to be paid for a legal day’s work, as hereinbefore defined, to all classes of such laborers, workmen or mechanics upon all such public work, ■or upon any material to be used upon or in connection therewith, shall not be less than the prevailing rate for a day’s work in the same trade or occupation in the locality within the state where such public work on, about or in connection with which labor is performed, in its final or completed form, is to be skuated, erected or used. * * *
Whether, therefore, the statute was unconstitutional or not, there was nothing to prevent this relator from consenting to the incorporation of the phraseology of the statute into the contract, and when he did that and voluntarily executed the contract, as in this case, he cannot effectively plead as an excuse for the- violation of his contract that, inasmuch as certain of its provisions are void when embodied in a statute, they are also void when incorporated into a voluntarily executed contract.
Kellogg & Rose, Attorneys for Respondent.
A. Laflin Kellogg and Alfred C. Pette, of Counsel.
John Whalen, Corporation Counsel, Theodore Connolly and Terence Farley, of Counsel.
It is not easy to appreciate the argument that admits the validity of the contract; its open violation by the relator; concedes that the provision is clear and unambiguous that declares it shall be null and void in the event of such a violation, and still contends that a recovery may be had in the face of the defense urged by every legal method, viz., that the relator cannot recover because the contract has become void by his act.
It is the relator’s violated agreement which entitles the defendant to claim that this contract is no longer of any effect. For it must not be forgotten that this relator comes into court admitting that he has violated the contract by failing to pay the prevailing rate of wages as he agreed to do, and by his¡ contract he agreed that the effect of his failure to do so should cause the contract to become void and of no effect.
Bartlett and Vann, JJ., concur with O’Brien and Randon, JJ., for affirmance, and Martin, J., concurs with O’Brien, J.; Parker, Ch. J., and Haight, J., read dissenting opinions.